*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELLIE NICHOLE STOCK,

        Defendant-Appellant.

UNPUBLISHED
October 12, 2023

No. 364193
Wayne Circuit Court
LC No. 17-003509-01-FC

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right from resentencing on her jury trial convictions of reckless driving causing death, MCL 257.626(4), first-degree fleeing and eluding, MCL 257.602a(5), second-degree fleeing and eluding, MCL 257.602a(4)(a), and reckless driving causing a serious impairment of a body function, MCL 257.626(3). At a resentencing hearing held on remand following an earlier appeal, defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 15 to 40 years' imprisonment for each of her convictions. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In an opinion disposing of defendant's earlier appeal, this Court summarized the underlying facts:

> This case arises out of a fatal motor vehicle accident that occurred on March 20, 2017, at the intersection of Woodward Avenue and State Fair Avenue in Detroit, Michigan. At the time of the accident, defendant was allegedly driving recklessly while she had cocaine in her body and lacked a valid driver's license. The accident resulted in the death of Bennie Sims, who was the driver of another vehicle involved in the accident, and serious injuries to Classie Butler, who was a passenger in the vehicle operated by defendant.
>
> At trial, Detroit Police Officer Bradley Donegan testified that, while working undercover, he saw defendant drive a gray Dodge Intrepid the wrong way

-1-

on a one-way street. Because Officer Donegan was in an unmarked vehicle, he directed Detroit Police Officer Sadie Howell and Detroit Police Officer Donte Jenkins, who were nearby in a semimarked police vehicle, to effectuate a traffic stop of defendant. Officer Howell and Officer Jenkins activated the police lights and siren of their vehicle in an attempt to stop defendant's vehicle on Woodward, but defendant fled at excessive speeds. Officer Howell and Officer Jenkins pursued defendant with their police lights and siren activated. Officer Donegan followed behind Officer Howell and Officer Jenkins.

Multiple eyewitnesses observed defendant's vehicle traveling at an excessive speed along Woodward. Butler, the passenger in the vehicle driven by defendant, testified that defendant said that an "undercover cop car" was behind them. Butler asked to be let out of the vehicle because she was scared about how fast defendant was driving, but defendant then drove faster. Officer Donegan testified that, at some point, Officer Howell and Officer Jenkins attempted to disengage from the pursuit because of the heavy traffic on Woodward. Defendant eventually drove through a red light at the intersection of Woodward and State Fair, striking a pickup truck driven by Sims. Sims died in the accident, and Butler was seriously injured. Defendant was taken to the hospital after the accident, and pursuant to a search warrant, police obtained a toxicology report showing that defendant had a cocaine metabolite in her urine. [*People v Stock*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 340541), pp 1-2 (*Stock I*), rev'd in part & remanded 507 Mich 1008 (2021).]

The jury found defendant guilty of reckless driving causing death, operating a motor vehicle while intoxicated causing death, MCL 257.625(4)(a), operating a motor vehicle while license has been suspended, revoked, or denied, causing death, MCL 257.904(4), first-degree fleeing and eluding, second-degree fleeing and eluding, reckless driving causing a serious impairment of a body function, operating a motor vehicle while intoxicated causing a serious impairment of a body function, MCL 257.625(5)(a), and operating a motor vehicle while license suspended, revoked, or denied, causing a serious impairment of a body function, MCL 257.904(5). *Stock I*, unpub op at 1. Defendant was originally sentenced, as a fourth-offense habitual offender, to concurrent terms of 19 to 50 years' imprisonment for each of her convictions. *Id*.

While defendant's original appeal was pending, she filed in the trial court a motion for a new trial and a request for a *Ginther*[1] hearing. *Id*. at 2. "After holding a *Ginther* hearing, the trial court denied defendant's motion for a new trial." *Id*.

In defendant's original appeal, the prosecutor conceded that no evidence was introduced that defendant's license had been suspended, revoked, or denied; this Court thus reversed her convictions for operating a motor vehicle while license suspended, revoked, or denied, causing death, and operating a motor vehicle while license suspended, revoked, or denied, causing a serious

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

impairment of a body function, because there was insufficient evidence to support those two convictions. *Id.* at 1, 12, 20. This Court affirmed in all other respects. *Id.* at 1, 20.

Among the arguments she raised in the earlier appeal, defendant asserted that there was insufficient evidence of operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function. *Id.* at 14. She argued that the toxicology report showed that her urine contained a cocaine metabolite, not cocaine itself. *Id.* In rejecting defendant's argument, this Court explained that the presence of a cocaine metabolite supported a reasonable inference that defendant had cocaine in her body while driving. *Id.* "The cocaine metabolite proves that cocaine was ingested at some point and constitutes inferential evidence that cocaine itself is present in the body." *Id.* Therefore, "[t]he evidence was sufficient to support defendant's intoxicated driving convictions." *Id.*

Defendant filed an application for leave to appeal in the Supreme Court. Following oral argument on the application, *People v Stock*, 506 Mich 930 (2020), the Court entered an order reversing this Court's "holding that the defendant's convictions for operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function were supported by sufficient evidence on the record." *People v Stock*, 507 Mich 1008, 1008 (2021) (*Stock II*). The Court reasoned that the prosecutor had "failed to present evidence that the presence of cocaine metabolites in the defendant's urine supports a reasonable inference that the defendant had cocaine in her body." *Id.* The Supreme Court further stated:

> Here, the prosecution failed to identify the metabolite or demonstrate that the metabolite *itself* was a "controlled substance" for purposes of MCL 257.625(8). Further, the prosecution's evidence showing the mere presence of an unidentified metabolite, but nothing more, was not sufficient to prove that the defendant had *any amount* of cocaine in her body at the time of the motor vehicle collision. We therefore REVERSE the defendant's sentences for operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function, and we REMAND this case to the Wayne Circuit Court for further proceedings not inconsistent with this order. On remand, the circuit court shall determine whether resentencing on the defendant's remaining convictions is required where the Court of Appeals has reversed the defendant's convictions of operating a motor vehicle while license suspended causing death and operating a motor vehicle while license suspended causing serious impairment of a body function and where this Court has reversed the defendant's sentences for operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function. In all other respects, the application for leave to appeal is DENIED, because we are not

persuaded that the remaining questions presented should be reviewed by this Court. We do not retain jurisdiction. [*Id*. at 1009.][2]

After the Supreme Court remanded the case back to the trial court, defendant filed a motion to disqualify the trial judge. The motion was denied by both the trial court and the Chief Judge's designee. The trial court later granted defendant's request for resentencing on her four remaining convictions and imposed within the guidelines sentences of 15 to 40 years' imprisonment for each of the four remaining convictions. This appeal ensued.

## II. DEFENDANT'S PRINCIPAL BRIEF ON APPEAL

## A. PROPORTIONALITY OF SENTENCES

Defendant first argues that her sentences are disproportionate. A trial court's "sentencing decisions must be reasonable" and "are reviewed for an abuse of discretion by determining whether they violated the principle of proportionality." *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 4 (opinion by BOLDEN, J.), citing *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

Defendant's 180-month minimum sentences fall within the guidelines range of 50 to 200 months. When a sentence falls within the legislatively determined guidelines, the Legislature concluded that the sentence should be affirmed:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. [MCL 769.34(10)]

However, the Supreme Court recently held that "MCL 769.34(10) impermissibly precludes substantive appellate review of within-guidelines sentences," *Posey*, ___ Mich at ___; slip op at 4 (opinion by BOLDEN, J.), and therefore the Court "severed" "the portion of MCL 769.34(10) mandating appellate affirmation of within-guidelines sentences . . . ." *Id*. at 37. The *Posey* Court

---

[2] Justice ZAHRA, joined by Justice VIVIANO, dissented from the Court's reversal of this Court's decision that there was sufficient evidence to support the intoxicated driving convictions. *Id*. at 1009-1013 (ZAHRA, J., dissenting). Justice ZAHRA agreed with this Court that the presence of cocaine metabolites in defendant's urine was "circumstantial and inferential evidence that defendant had cocaine in her body at the time of the accident." *Id*. at 1012. "Further, defendant's behavior leading up to the accident is compelling circumstantial evidence that she operated her vehicle with cocaine in her body." *Id*. Defendant drove the wrong way down a one-way street, refused to pull her vehicle over for the police, initiated a high-speed police chase, sped down Woodward Avenue in rush-hour traffic, ran a red light, and crashed into another vehicle, causing serious injuries to her passenger as well as the death of the other driver. *Id*. at 1012-1013. Justice ZAHRA thus discerned no error in this Court's affirmance of defendant's intoxicated driving convictions. *Id*.

-4-

further held that "challenges to within-guidelines sentences are reviewed for reasonableness according to the test outlined in *Steanhouse*." *Id*. at 4-5. A nonbinding presumption of proportionality exists, and the defendant bears the burden of demonstrating that the within-guidelines sentence is unreasonable or disproportionate. *Id*. at 36.[3]

Under the principle of proportionality, sentences imposed by the trial court must " 'be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 460, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). When considering the proportionality of a sentence, a court may consider several factors, including, but not limited to,

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

Defendant's minimum sentences fall within the guidelines range and are thus presumptively proportionate. *Posey*, ___ Mich at ___; slip op at 36 (opinion by BOLDEN J.). A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted); see also *Milbourn*, 435 Mich at 661 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion *in unusual circumstances*.") (emphasis added). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (quotation marks, brackets, and citation omitted).

Defendant has failed to identify any unusual circumstances that would overcome the presumptive proportionality of her within-guidelines sentences. Although she argues that the trial court failed to consider her allegedly positive conduct in prison and her rehabilitative potential,[4]

---

[3] The relevant portions of Justice BOLDEN'S lead opinion in *Posey* were supported by a majority of justices. Justice BERNSTEIN joined Justice Bolden's lead opinion in full. *Posey*, ___ Mich at ___; slip op at 38 (opinion by BOLDEN, J.). Justice CAVANAGH wrote separately to address another issue not relevant here but agreed with the lead opinion's reasoning and holding on the sentencing issue. *Id*. at 1, 28 (CAVANAGH, J., concurring in part and concurring in the judgment). Justice WELCH disagreed with some of the lead opinion's reasoning on the sentencing issue but agreed with the lead opinion's ultimate conclusions that the first sentence of MCL 769.34(10) must be struck as invalid and that a rebuttable presumption of proportionality exists for within-guidelines sentences. *Id*. at 1-3, 23 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment).

[4] The presentence investigation report reflects that, although defendant works as a porter in prison, has completed various prison programs, and claims to be working with a prison counselor who

neither of these are unusual, uncommon, or rare circumstances. And the record undercuts defendant's contention that the trial court failed to consider her rehabilitative potential and her conduct in prison. Defense counsel discussed these matters at the resentencing hearing, and his sentencing memorandum and appended mitigation report likewise addressed these matters, and the trial court indicated that it had reviewed defense counsel's submissions. Defendant alludes to health and addiction issues; again, this was all brought to the trial court's attention in defendant's sentencing memorandum, which the trial court had reviewed. The trial court's consideration of mitigating factors is further reflected in the court's imposition of minimum sentences that were 20 months below the top of the guidelines range. The trial court was "not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019).

In making this argument, defendant further states that, "but for the fact that some old felony convictions were not closed until 2017 and she had an uncounseled 2009 misdemeanor, she was crime free over 10 years . . . ." This contention is meritless and unsupported. Defendant was not crime-free for over 10 years. Her extensive criminal record consists of seven felony convictions and eight misdemeanor convictions. She had absconded from parole at the time of the instant offenses.

Defendant provides no factual support for her contention that she lacked counsel for a 2009 misdemeanor conviction. Defendant appears to be referring to a January 14, 2010 plea-based conviction for obstructing by disguise, which she committed on August 5, 2009. The presentence investigation report (PSIR) states, "Unknown," in the "Attorney Present" section for that offense. This notation does not establish that defendant lacked counsel, only that it was unknown whether she had counsel. Defendant "bears the initial burden of establishing that the conviction was obtained without counsel or without a proper waiver of counsel." *People v Carpentier*, 446 Mich 19, 31; 521 NW2d 195 (1994). She could meet this initial burden by presenting a docket entry or a transcript showing the lack of counsel or by presenting evidence that she requested records and the court failed to reply or to furnish copies of the records within a reasonable time. *Id.* However, defendant fails to address this burden or to explain how she has met it.[5] Defense counsel sent requests for records to various courts a mere two days before the resentencing hearing, and defense counsel then withdrew his argument on the issue at the resentencing hearing. Moreover, the written requests appended to defendant's sentencing memorandum do not appear to include a request to the applicable district court in regard to the 2010 conviction. The record lacks support for defendant's argument.

Overall, defendant has failed to present unusual circumstances that would overcome the presumptive proportionality of her within-guidelines sentences. Defendant has an extensive

_____

helps offenders reenter society, her behavior in prison in recent years has not been entirely positive. From 2019 to 2021, she had five misconduct violations. As for her rehabilitative potential, it is notable that, throughout her criminal history, defendant has absconded from parole a total of 24 times, including at the time she committed the instant offenses.

[5] Although defendant presents a somewhat more developed argument on this point in her Standard 4 brief, her argument is unavailing.

criminal record. She had absconded from parole when she committed the instant offenses. She sped away from the police on a busy road and drove through a red light, causing a collision that seriously injured her passenger and killed the driver of the other vehicle. Her sentences are proportionate to the seriousness of the circumstances surrounding the offense and the offender.

## B. DISQUALIFICATION OF THE TRIAL COURT

Defendant also challenges the denial of her motion to disqualify the trial judge.

"When this Court reviews a decision on a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion, while the application of the facts to the relevant law is reviewed de novo." *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011).

MCR 2.003(C)(1) provides, in relevant part:

Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

(a) The judge is biased or prejudiced for or against a party or attorney.

(b) The judge, based on objective and reasonable perceptions, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v [AT] Massey [Coal Co, Inc]*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. . . .

"A party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999), citing *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). "Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). "Comments critical of or hostile to counsel or the parties are ordinarily not supportive of finding bias or partiality." *Wells*, 238 Mich App at 391, citing *Cain*, 451 Mich at 497 n 30.

"Judicial disqualification based on due process grounds is reserved for extreme cases." *Roscoe*, 303 Mich App at 647, citing *Caperton*, 556 US at 890. "And a ruling against a defendant, even if erroneous, does not create a serious, objective risk of actual bias that rises to an unconstitutional level." *Roscoe*, 303 Mich App at 647-648. "Additionally, . . . one erroneous ruling does not give the appearance of impropriety." *Id*. at 648.

Defendant focuses on the trial judge's comments at an August 24, 2018 hearing indicating that he did not discern a significant distinction between cocaine and cocaine metabolites. Defendant notes that the trial judge's comments on this point ultimately proved to be incorrect in light of the Supreme Court's subsequent order in *Stock II*. However, an erroneous ruling or comment does not by itself establish actual bias, *In re MKK*, 286 Mich App at 566, an appearance

of impropriety, *Roscoe*, 303 Mich App at 648, or "a serious, objective risk of actual bias that rises to an unconstitutional level[,]" *id*. at 647-648.

Defendant further asserts that, at a September 24, 2021 hearing on the disqualification motion, the trial judge stated that he did not feel that he would be unbiased, unprejudiced, or impartial. But when read in the full context of his remarks, it is apparent that the single line that defendant seizes from the transcript constituted a misstatement or misquote. It is quite evident to any unbiased reader of the transcript that the trial judge was attempting to express that he would be unbiased, unprejudiced, and impartial:

> With regard to the underlying motion to disqualify, um, this [c]ourt has always prided itself on attempting to follow the law of the state. And if the Supreme Court of the State of Michigan says that I was wrong about cocaine versus cocaine metabolites, the [c]ourt will follow the law that the Supreme Court has set forth and I will not take that into account when I—if—if I grant the motion to resentence.

> I don't feel that the [c]ourt is biased in this matter. The Court of Appeals agreed with my opinion and also at least Justice Zahra. But I certainly have always been capable of following the law and if the Supreme Court says that's the law, that's the law and I'm going to follow that.

> So I don't feel that I would be unbiased or unprejudiced or impartial. I don't think any of that and I don't think the defense has met their burden to disqualify myself. So for all of those reasons—and I will accept the Supreme Court's determination and I will follow the law as set forth by the Michigan Supreme Court and—so I am going to deny the motion to disqualify the [j]udge.

Again, it is clear that the trial judge was endeavoring to express that he would be unbiased, unprejudiced, and impartial. The single sentence that defendant grasps out of its full context was a misstatement or a misquote. Further undercutting any contention of bias is that the trial judge ultimately granted resentencing and reduced defendant's minimum sentences by four years.

Overall, defendant has failed to demonstrate actual bias, an appearance of impropriety, or a due-process violation. The motion to disqualify the trial judge was therefore properly denied.

## III. DEFENDANT'S STANDARD 4 BRIEF ON APPEAL

Defendant argues that the trial court erred in assessing points for prior record variable (PRV) 1, PRV 2, and PRV 5 because there was a 10-year gap between the discharge date for her 2004 conviction and her next offenses.

"Issues involving the proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citations omitted). "On appeal, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory

interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted).

MCL 777.50(1) provides, "In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication." MCL 777.50(2) states:

> Apply subsection (1) by determining the time between the discharge date for the prior conviction or juvenile adjudication most recently preceding the commission date of the sentencing offense. If it is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and determine the time between the commission date of that prior conviction and the discharge date of the next earlier prior conviction or juvenile adjudication. If that period is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and repeat this determination for each remaining prior conviction or juvenile adjudication until a period of 10 or more years is found or no prior convictions or juvenile adjudications remain.

MCL 777.50(3) provides, "If a discharge date is not available, add either the time defendant was sentenced to probation or the length of the minimum incarceration term to the date of the conviction and use that date as the discharge date." MCL 777.50(4)(b) states, " 'Discharge date' means the date an individual is discharged from the jurisdiction of the court or the department of corrections after being convicted of or adjudicated responsible for a crime or an act that would be a crime if committed by an adult."

Therefore, the issue under MCL 777.50 is "whether, starting with the present offense, there was ever a gap of 10 or more years between a discharge date and a subsequent commission date that would cut off the remainder of [the defendant's] prior convictions or juvenile adjudications." *People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009). "When a defendant has gone 10 years between the discharge from a conviction and the commission of his or her next offense, all convictions, regardless of the crime, are to be ignored." *People v Butler*, 315 Mich App 546, 551-552; 892 NW2d 6 (2016).

The PSIR reflects that the conviction date for the first-degree retail fraud conviction was November 1, 2004, and that defendant was sentenced on November 23, 2004, to 19 months to 20 years' imprisonment. In the "Discharge Date" section for that conviction, the PSIR states, "N/A." The "Notes" section for that conviction states, "The def. was parole[d] on nineteen (19) separate occasions, last paroling on 1-18-17, 2-8-17 absconded from parole, 3-27-17 held under custody. 08/08/2017, returned to prison as a parole violator with a new sentence." When this issue was

raised at sentencing, the trial court agreed with the prosecutor's suggestion to use August 8, 2017, as the discharge date for the 2004 conviction. [6]

Defendant asserts that, because the PSIR states "N/A" for the discharge date, the discharge date is not available, thus requiring application of MCL 777.50(3). Defendant reasons that, adding her minimum incarceration term of 19 months to her conviction date of November 1, 2004, her discharge date was in 2006, more than 10 years before she committed the instant offenses on March 20, 2017. Hence, she argues, there was a gap of more than 10 years between the discharge date for her 2004 conviction and her commission of the next offenses.

Defendant's argument is unconvincing. As noted, MCL 777.50(4)(b) provides, " 'Discharge date' means the date an individual is discharged from the jurisdiction of the court or the department of corrections after being convicted of or adjudicated responsible for a crime or an act that would be a crime if committed by an adult." The PSIR reflects that defendant remained under the jurisdiction of the Department of Corrections when she committed the instant offenses, as she had absconded from parole when she committed the instant offenses.

Defendant argues that, even if the definition in MCL 777.50(4)(b) is used, she was under the jurisdiction of the Parole Board rather than the Department of Corrections while she was on parole. Defendant fails to recognize that the Parole Board is part of the Department of Corrections. See *Hopkins v Parole Bd*, 237 Mich App 629, 637; 604 NW2d 686 (1999), citing MCL 791.231a. "A paroled prisoner remains in the custody of the Department of Corrections. Unless and until parole is successfully completed, the prisoner is deemed to be serving the sentence imposed by the trial court." *Harper v Dep't of Corrections*, 215 Mich App 648, 650; 546 NW2d 718 (1996) (citation omitted); see also MCL 791.238(1) ("Each prisoner on parole shall remain in the legal custody and under the control of the [Department of Corrections]. . . ."); MCL 791.238(6) ("A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court . . . .").

Accordingly, defendant remained under the jurisdiction of the Department of Corrections when she was on parole, which is when she committed the instant offenses. She was continuing to serve the sentence imposed for her 2004 conviction. Defendant has thus failed to establish that the instant convictions were committed more than 10 years after she was discharged from the jurisdiction of the Department of Corrections. The trial court was not precluded from assessing points for PRV 1, PRV 2, and PRV 5.[7]

---

[6] Defendant asks this Court not to consider her 2010 conviction in determining whether a 10-year gap exists, as she claims that she lacked counsel for the 2010 conviction. Although we disagree with defendant's argument on that point, we will address this issue as if the 2010 conviction was not considered in determining whether there is a 10-year gap.

[7] On her own behalf, defendant continues to argue that her 2010 misdemeanor conviction was obtained without the benefit of counsel or a valid waiver of counsel. Given our analysis of the

Defendant next argues that MCL 769.1k(1)(b)(*iii*), which authorizes the imposition of court costs, is unconstitutional. To preserve a challenge to the constitutionality of a statute, a defendant must raise the constitutional challenge in the trial court. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). Defendant did not raise this constitutional challenge in the trial court. Therefore, as defendant correctly concedes in her Standard 4 brief, the issue is unpreserved.

Because the issue is unpreserved, this Court's review is under the plain-error standard. *Id*. Under this standard, defendant must demonstrate a clear or obvious error that was prejudicial in that it affected the outcome of the lower court proceedings. *Id*. Even if that burden is satisfied, reversal is warranted "only if the plain error led to the conviction of an innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. at 61-62 (quotation marks, brackets, ellipsis, and citation omitted).

Defendant argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional on its face and as applied to her. She contends that the statute violates the separation of powers by assigning to the judiciary tasks that are more properly accomplished by the Legislature. She further asserts that the statute violates due process by creating a potential for bias or an objective risk of bias, all of which were raised in cases that had been pending before the Supreme Court in *People v Johnson*, 509 Mich 1094 (2022) (*Johnson II*), vacated by 992 NW2d 247 (Mich, 2023), and *People v Edwards*, 509 Mich 1095 (2022) (*Edwards I*), vacated by 992 NW2d 266 (Mich, 2023).

Initially, this issue is not properly before this Court. "[W]here an appellate court remands for some limited purpose following an appeal as of right in a criminal case, a second appeal as of right, limited to the scope of the remand, lies from the decision on remand." *People v Kincade (On Remand)*, 206 Mich App 477, 481; 522 NW2d 880 (1994). "[T]he scope of the second appeal is limited by the scope of the remand." *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975). The trial court imposed the $1,300 in court costs pursuant to MCL 769.1k(1)(b)(*iii*) at the time of the original sentencing. In her earlier appeal from her convictions and original sentencing, defendant raised no issue challenging the constitutionality of MCL 769.1k(1)(b)(*iii*). See *Stock I*, unpub op at 1-20. The Supreme Court remanded the case to the trial court to determine whether defendant was entitled to resentencing in light of the vacation of four of her eight convictions. *Stock II*, 507 Mich at 1009. On remand, the trial court resentenced defendant. Defendant had already paid the $1,300 in court costs that were assessed at the original sentencing, and the trial court did not impose additional court costs on resentencing. Therefore, in the present appeal, defendant is challenging the constitutionality of a statute allowing the imposition of court costs that were imposed only at the original sentencing, from which defendant has already appealed, and not at the resentencing, from which the present appeal arises. Therefore, the issue is beyond the scope of the remand and is not properly before this Court.

But even if the issue was properly before this Court, defendant's argument would fail. The Supreme Court has since vacated its earlier orders granting leave to appeal and instead denied

_____

preceding issue, it is unnecessary to reach the present issue. Defendant has not provided proof of the authenticity or completeness of the records, and the alleged letter to the 44th District Court contains handwritten alterations.

leave to appeal in both cases. *People v Johnson*, 992 NW2d 247 (Mich, 2023) (*Johnson III*); *People v Edwards*, 992 NW2d 266 (Mich, 2023) (*Edwards II*). By ultimately denying leave to appeal, the Supreme Court left intact this Court's opinion in *People v Johnson*, 336 Mich App 688; 971 NW2d 692 (2021) (*Johnson I*), which rejected the same facial constitutional challenges that defendant cursorily asserts in her Standard 4 brief. *Id*. at 690-705. This Court is required to follow *Johnson I*. MCR 7.215(C)(2).

Defendant next argues that her constitutional right to due process has been violated because, she claims, the trial court refused to enter an order compelling the return of certain money she paid as costs and fees in connection with her vacated convictions. Constitutional due-process issues are reviewed de novo. *Jackson*, 292 Mich App at 590. Defendant's argument is unavailing.

In support of her argument, defendant cites *Nelson v Colorado*, 581 US 128, 130; 137 S Ct 1249; 197 L Ed 2d 611 (2017), in which the United States Supreme Court held:

> When a criminal conviction is invalidated by a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction? Our answer is yes. Absent conviction of a crime, one is presumed innocent. Under the Colorado law before us in these cases, however, the State retains conviction-related assessments unless and until the prevailing defendant institutes a discrete civil proceeding and proves her innocence by clear and convincing evidence. This scheme, we hold, offends the Fourteenth Amendment's guarantee of due process.

"To comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id*. at 139.

Before the resentencing hearing, defendant filed a motion requesting reimbursement of certain costs and fees she had paid since the original sentencing date. At the resentencing hearing, the trial court stated that, because four of the convictions had been vacated, the court would order that defendant be reimbursed $244 of the minimum state costs if she had paid those costs, that defendant be reimbursed $200 in attorney fees she had paid, and that $380 in late fees be paid back to defendant.

According to defendant, the trial court has failed to effectuate its oral ruling in a written order requiring the Wayne County Cashier's office to reimburse her for the amounts to which she was entitled under the court's oral ruling at the resentencing hearing. Specifically, in April 2023 she filed a pro se motion requesting the return of the money and that, on April 19, 2023, the trial court entered an order granting the motion and reducing the amount of fines and costs.

Defendant complains that the April 19, 2023 order is inadequate because it refers to a reduction rather than a reimbursement and that the Wayne County Cashier's office has thus declined to reimburse the money to defendant. However, the order granted defendant's motion. If different order language is needed to obtain a reimbursement of the funds, defendant remains free to seek appropriate relief in the trial court. This is not a situation akin to that discussed in *Nelson*: defendant has not been required to file a discrete civil action or prove her innocence. She is free to file another motion in the trial court requesting a revised order utilizing language that

would allow her to obtain a reimbursement. Defendant has not been denied the due process of law.

In a separate costs argument, defendant argues that the trial court should have reimbursed a portion of the $1,300 in court costs she paid after the original sentencing because four of the eight convictions were vacated on appellate review.

As explained, defendant was ordered to pay $1,300 in court costs at the time of her original sentencing. The PSIR states that defendant paid this assessment in full. In her motion seeking reimbursement of court costs, defendant argued that she was entitled to reimbursement of some of the court costs she had paid because four of the eight convictions had been vacated on appeal. At the resentencing hearing, the trial court declined to order a reimbursement of any portion of the $1,300 in court costs that defendant had paid because "that's more than a reasonable amount," i.e., it was less than the actual costs, the vacating of four of the convictions did not change the court costs, and "[t]hat is more than reasonable for those four [remaining] convictions, and the trial." Defendant provides no basis to question the trial court's reasoning. Four of defendant's convictions are still intact, and the trial court explained that the amount of the court costs was unaffected and remained reasonable for the four remaining convictions. Defendant has not established any error or due-process violation.

Defendant next argues that the trial court abused its discretion in responding to her challenge to the accuracy of information in the PSIR concerning certain activities that were the subject of a police investigation at the location from which defendant was exiting before the police attempted to effectuate a traffic stop of her vehicle.

This Court reviews for an abuse of discretion a trial court's response to an assertion of an inaccuracy in the PSIR. *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Kosik*, 303 Mich App 146, 154; 841 NW2d 906 (2013). "At a sentencing hearing, either party may challenge the accuracy or relevancy of information contained in the PSIR." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009).

> There is a presumption that the information contained in the PSIR is accurate unless the defendant raises an effective challenge. When a defendant challenges the accuracy of the information, the defendant bears the burden of going forward with an effective challenge. If an effective challenge has been raised, the prosecution must prove by a preponderance of the evidence that the facts are as the prosecution asserts. Once a challenge to the accuracy of the PSIR has been alleged, the trial court is required to respond. [*Id*. (citations omitted).]

"If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections." MCL 771.14(6).

In her sentencing memorandum, defendant cursorily asked the trial court to strike the language in the PSIR stating that "she was exiting a known human trafficking/narcotics location

at 603 W. Hollywood." The prosecution opposed defendant's request to strike that language from the PSIR, stating that the language was true, defendant had presented nothing to show that it was incorrect, and that "[t]he police were watching the house as part of a human trafficking investigation."

The trial court did not abuse its discretion in denying defendant's request to strike this language from the PSIR. Defendant did not present an effective challenge to the accuracy of the information, as she offered no basis to conclude that the information was incorrect. Although defense counsel stated that defendant "vehemently denies that anything was being done there," her self-serving denial did not comprise an effective challenge. The language in the PSIR did not state that defendant herself was involved in any human trafficking or narcotics at that location, only that she was exiting a known human trafficking and narcotics location. The information was relevant to why the officers were observing the location. The trial court's decision fell within the range of principled outcomes.[8]

Finally, defendant argues that her sentences are disproportionate and amount to unconstitutionally cruel or unusual punishment.

To preserve the argument that a sentence is unconstitutionally cruel or unusual punishment, a defendant must raise that issue in the trial court. *Bowling*, 299 Mich App at 557. Defendant did not do so. Therefore, the issue is unpreserved.

Because the issue is unpreserved, review is "limited to plain error affecting defendant's substantial rights." *Id*. Under that standard, a defendant must show that an error occurred, that the error was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if a defendant satisfies those three requirements, reversal is warranted only if the error resulted in the conviction

---

[8] Defendant contends in her Standard 4 brief that the preliminary complaint reports of Officers Howell and Jenkins provided the only evidence that the location was being used for human trafficking and narcotics and that the officers were unreliable. This argument was not presented to the trial court. The trial court did not abuse its discretion by failing to consider an argument that defendant did not make below. In any event, defendant has not established that any information from those officers was necessarily so unreliable that it must be stricken. Also, the information is consistent with more general information provided by Officer Donegan that an undercover operation was underway in the area. See *Stock I*, unpub op at 2. Defendant further asserts that she was unable to cross-examine either officer because they did not testify at trial and had invoked or were expected to invoke their Fifth Amendment privileges, apparently due in part to internal police department discipline of the officers. "However, a sentencing hearing is not a criminal trial." *People v Uphaus*, 278 Mich App 174, 183; 748 NW2d 899 (2008). At sentencing, the rules of evidence do not apply, nor do many of the constitutional requirements applicable to criminal trials. *Id*. at 183-184; see also MRE 1101(b)(3). In addition, defendant's trial counsel testified at the *Ginther* hearing that the defense did not wish to call Officer Howell or Jenkins as witnesses at trial because it would not have been strategically smart, and defendant has not challenged that strategic assessment. See *Stock I*, unpub op at 16.

of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. (quotation marks and citation omitted). "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *Bowling*, 299 Mich App at 557-558 (quotation marks and citation omitted). "A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *Id*. at 558. "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted).

As explained earlier, defendant's sentences are within the guidelines range and are thus presumptively proportionate. *Id*. Defendant has failed to present any unusual circumstances that would overcome the presumptive proportionality of her within-guidelines sentences. Defendant says that "[t]here is nothing notable about this offense or offender that would warrant a top-of-the-guidelines sentence." But defendant's sentences are 20 months *below* the top of the guidelines range. She has an extensive criminal history and had absconded from parole 24 times, including at the time of the instant offenses. She fled from the police, sped along a busy road, and drove through a red light, causing an accident that seriously injured her passenger and killed the driver of the other vehicle. Her sentences are proportionate to the seriousness of the circumstances surrounding the offense and the offender. Because her sentences are proportionate, they are not unconstitutionally cruel or unusual. *Id*.

Defendant has also failed to demonstrate that her sentences are cruel or unusual in comparison to the penalties imposed for other crimes in this state or for the same crimes in other states. Defendant refers to attachments to her Standard 4 brief that list the supposed results of her legal research. These documents list various statutes and cases she has found. But defendant fails to provide an adequate argument establishing that these legal authorities pertain to the relevant comparable offenses in this state or the same offenses in other states and that, in relation to other crimes and other states, her sentences are abnormally harsh. Defendant may not rely on this Court to make her argument for her. *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2007). Overall, defendant has failed to demonstrate that it is clear or obvious that her sentences are unconstitutionally cruel or unusual.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

-15-